**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1728-24

JASON SHARP,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued April 15, 2026 – Decided April 27, 2026

Before Judges Currier and Berdote Byrne.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx0624.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader PC, attorneys; Samuel M. Gaylord, on the brief).

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Nels J. Lauritzen, Legal Affairs Deputy Director, attorney; Thomas R. Hower, on the brief).

PER CURIAM

Petitioner Jason Sharp appeals from the final agency decision of the Board of Trustees, Police and Firemen's Retirement System (the Board), which denied his application for accidental disability retirement benefits following a May 25, 2019 incident in which he sustained injury to his left shoulder while subduing a combative inmate at the Camden County Correctional Facility. This matter comes before us a second time, after a remand from a prior Appellate Division decision that vacated the Board's previous denial of accidental disability benefits and directed the Board to determine whether a principled legal distinction could be drawn between the facts of this case and those in Richardson v. Board of Trustees, Police and Firemen's Retirement System, 192 N.J. 189 (2007). In that seminal case, the Supreme Court found a corrections officer was entitled to accidental disability retirement benefits for an injury he suffered while subduing an inmate. Following the remand here, the Board issued another final agency decision, again denying petitioner accidental disability retirement benefits because it concluded the facts of this case are legally distinguishable from Richardson based on the relative level of violence involved in each incident.

We disagree and reverse and remand the Board's decision with direction that petitioner be awarded accidental disability retirement benefits. The facts of

this case are materially indistinguishable from <u>Richardson</u>, and the Board's basis for distinguishing the two cases, the degree of force the inmate used, is contrary to <u>Richardson</u>'s espoused principle that the traumatic event standard requires no particular amount of force.

I.

We incorporate the facts from this court's prior decision, <u>Sharp v. Bd. of Trs., Police and Firemen's Ret. Sys.</u>, No. A-0643-22 (App. Div. Oct. 7, 2024), which neither party disputes. On May 25, 2019, Sharp was employed by Camden County as a corrections officer. He was assigned to perform his regular duties at the Camden County Correctional Facility, which included serving meals to inmates in the special needs unit. Sharp was working with two other officers and a sergeant.

The officers arrived at the cell of an inmate who appeared to be agitated. Because of the inmate's condition, Sharp attempted to pass the inmate's meal through a pass-through door cut into the cell door. At the time, Sharp was holding ten Styrofoam trays of food, five in each hand. The sergeant was unable to open the pass-through door with a key. The sergeant decided to open the cell door to permit Sharp to deliver the meal. In doing so, the sergeant did not follow established protocol requiring her to call for back-up officers or a reaction team

3

to assist in controlling the inmate after the cell door was opened. When she opened the cell door, the inmate charged out of the cell.

The three officers attempted to push the inmate back into the cell. As they tried to close the door, they realized it remained locked in the open position. The door bounced back open and the inmate charged out a second time. Sharp dropped the food trays and engaged in a struggle with the inmate.

The officers brought the inmate to the ground. As Sharp attempted to pin one of the inmate's arms, the sergeant pepper sprayed the inmate, who jerked and tensed up, attempting to pull his hands up to cover his face. At that time, Sharp heard and felt a pop in his left shoulder. He held the inmate down until assistance arrived. The parties do not dispute the injury to Sharp's shoulder rendered him totally and permanently disabled from the performance of his duties as a corrections officer.

Sharp applied for accidental disability retirement benefits as a result of the injury.

In an initial decision, the ALJ recommended the Board deny Sharp accidental disability retirement benefits. The ALJ found the three events on which Sharp relied were not the direct cause of his disability and could not,

4

therefore, be the basis on which to award him accidental disability retirement benefits. The ALJ explained:

> Here, the traumatic event was the petitioner's interaction with the attacking inmate. The traumatic event was not the unexpected issue with the pass through door, the unexpected issue of the cell door bouncing back because it was in the locked position, or the failure of the sergeant to follow proper protocol and call for back-up prior to entering the cell. While those three events may have been undesigned and unexpected on that day, the fact that those three events were undesigned and unexpected is not the controlling issue. They were simply events that led up to the interaction with the attacking inmate. The controlling issue is whether the traumatic event, which was the petitioner's interaction with the attacking inmate, and having to restrain that attacking inmate, was undesigned or unexpected.

The ALJ found no "unexpected happening" resulted in Sharp's disability. According to the ALJ, Sharp "stated that he assisted in restraining an inmate. This is part of his job and expected as a corrections officer in a prison setting." The ALJ noted restraining inmates is listed in the job description of corrections officers and Sharp received training in controlling inmates through physical force. He stated that Sharp "was employed at a corrections facility, and it is reasonable to believe that an inmate would lash out, be involved in altercations, and that petitioner would have to intervene."

5

On September 16, 2022, the Board issued a final agency decision adopting the recommendation of the ALJ and denying Sharp's application for accidental disability retirement benefits, finding the event causing his disability was not a traumatic event within the meaning of the relevant statute because his physical engagement with the inmate was not undesigned and unexpected, but an expected responsibility of a corrections officer. The Board awarded him ordinary disability retirement benefits instead. Sharp filed a notice of appeal to the Appellate Division on the same date.

The Appellate Division issued its decision on October 7, 2024. The panel "affirm[ed] the Board's decision to the extent it rejected Sharp's claim that the three events preceding his physical encounter with the inmate were traumatic events qualifying him for accidental disability retirement benefits," agreeing with the Board that those events were not the direct cause of his disability. However, the panel "vacat[ed] the Board's denial of Sharp's application for accidental disability retirement benefits and remand[ed] the matter for the Board to determine in the first instance whether a principled legal distinction can be made between the facts of this case and those in Richardson." The panel explained "the Board's decision, which adopted the ALJ's recommendation, contains no analysis of how the events leading to Sharp's injury meaningfully

6

differ from those before the <u>Richardson</u> Court, where the officer was found eligible for accidental disability retirement benefits."

On February 10, 2025, the Board issued its second final agency decision in which it determined no additional witness testimony was needed and again denied Sharp accidental disability retirement benefits. The Board reasoned "[t]he facts of <u>Richardson</u> and the facts of the Incident are legally distinguishable and distinct. The description of the <u>Richardson</u> facts, quoted in the Appellate decision, is more extensive and more violent than the facts of the Incident." Sharp filed this second appeal.

II.

"An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011) (quoting <u>In re Herrmann</u>, 192 N.J. 19, 27-28 (2007)). Our review of an agency's decision considers:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

7

[In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013) (quoting Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

We must affirm an agency's findings of fact if "supported by adequate, substantial[,] and credible evidence." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Moreover, if we are "satisfied after [our] review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then [we] must affirm even if . . . [we] feel[ ] that [we] would have reached a different result . . . ." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988). The burden of demonstrating arbitrary, capricious, or unreasonable action rests upon the party challenging it. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). We are not bound, however, by an agency's "determination of a strictly legal issue." Russo, 206 N.J. at 27 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We review its purely legal conclusions de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020).

Sharp argues the May 25, 2019 incident satisfies the "undesigned and unexpected" standard pursuant to Richardson and therefore entitles him to accidental disability retirement benefits. He argues the Board improperly

invented a new requirement by demanding claimants demonstrate a "relative level of violence" comparable to <u>Richardson</u>. We agree.

N.J.S.A. 43:15A-43(a) provides, in pertinent part, accidental disability retirement benefits may be obtained "if [an] employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." Our Supreme Court in <u>Richardson</u> clarified the meaning of the phrase "result of a traumatic event" in the statute in establishing a five-part test a claimant seeking accidental disability retirement benefits must satisfy. 192 N.J. at 212-13. The list includes:

> 1. that [the member] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Ibid.]

"Thus, a member who is injured as a direct result of an identifiable, unanticipated mishap has satisfied the traumatic event standard." Id. at 213. In Richardson, the petitioner, also a corrections officer, responded to an emergency call for assistance from officers dealing with an unruly inmate. Id. at 193. They attempted to restrain the inmate so they could handcuff him behind his back, and in doing so, they wrestled the inmate to the ground on his stomach. Ibid. The petitioner "straddled the inmate to hold him down, but the inmate continued to struggle by kicking, punching, and throwing his body around." Ibid. As the petitioner reached for a pair of handcuffs, "the inmate pulled his arm loose and forcefully jerked up from the ground, knocking [the petitioner] backward." Ibid. The force of the fall caused the petitioner to fall back onto his left hand and hyperextend his wrist. Ibid. It was later found the petitioner had suffered a complete tear of the ligament, and surgery to repair the injury was unsuccessful. Ibid. Richardson's injury resulted in his total and permanent disability from performing his duties as a corrections officer. Ibid.

10

The petitioner filed for accidental disability retirement benefits, and the Board denied the application because it found "[the petitioner] did not suffer a traumatic event as required by the statute." Id. at 194. Similarly, "the ALJ determined that the . . . incident did not constitute a traumatic event, because [the petitioner]'s response was part of the ordinary duties of a corrections officer." Ibid. The Board adopted that decision, and we affirmed, noting the petitioner's "injury also did not satisfy the great-rush-of-force prong of the traumatic event standard." Ibid.

Our Supreme Court reversed, rejecting the Board's argument "that because subduing an inmate is part of the anticipated work of a corrections officer and was not unexpected or unintended, [the petitioner] cannot satisfy the traumatic event standard." Id. at 213. It concluded the Board "misread[]" the statute. Ibid. Instead, the Court stressed the statute's requirement the traumatic event "occur 'during and as a result of the performance of [the member's] regular or assigned duties.'" Ibid. (emphasis and alteration in original). Since then, other courts have found, in the specific context of correctional facilities, that injuries sustained by a corrections officer in the context of subduing an inmate are unexpected or unintended.

A-1728-24

Moreover, the <u>Richardson</u> Court cited favorably to its prior decision in <u>Gable v. Board of Trustees, Public Employees' Retirement System</u>, 115 N.J. 212 (1989), noting it "recognized the 'actions of an unruly inmate' as the necessary qualifying external force distinct from an employee's 'own conduct.'" <u>Richardson</u>, 192 N.J. at 208 (quoting <u>Gable</u>, 115 N.J. at 222). The Court's observations in <u>Gable</u> are instructive here, particularly where it noted:

> We recognize that a corrections officer's job is dangerous. There is always the possibility that [they] will be attacked violently by an inmate. . . . These occurrences, however, while occupational hazards, do not occur frequently enough to constitute normal stress or strain. Although a corrections officer, such as Gable[,] . . . may realize that there is a "potential that [they] will be called upon to subdue an inmate, an officer does not expect [their] daily routine will normally involve being struck by an aggressive or escaping inmate."
>
> [115 N.J. at 223-24.]

The Court further added, "Merely by performing their jobs, corrections officers do not 'voluntarily' assume the risk of being assaulted by an unruly inmate" because they "are not hired to be punching bags." <u>Id.</u> at 224.

The Board's attempt to distinguish <u>Richardson</u> from the present matter by focusing on the amount of force used is misplaced. The <u>Richardson</u> Court explicitly recognized "not every case will require a great rush of force" to qualify

12

for accidental disability retirement benefits. <u>Richardson</u>, 192 N.J. at 213. "Indeed, no particular amount of force is necessary, and no gravitational force analysis is implicated in the traumatic event standard." <u>Ibid.</u> The Court emphasized the "polestar" of the inquiry was "whether, during the regular performance of [the petitioner's] job, an unexpected happening . . . has occurred and directly resulted in the permanent and total disability of the member." <u>Id.</u> at 214.

In our prior decision, we noted the "numerous similarities" between the present case and <u>Richardson</u>. Indeed, the facts of <u>Richardson</u> are almost identical to the facts of the present case; the only tangible difference is the degree of force the inmate used. Both Sharp and Richardson were corrections officers who attempted to subdue a combative inmate who was behaving erratically. Both Sharp and Richardson sustained an injury caused by their encounter with an inmate and the external force used by the inmate. <u>See</u> <u>Richardson</u>, 192 N.J. at 214-15. The effort exerted by the corrections officers in both matters was not part of the normal stress or strain of the job, and there is no suggestion their injuries stemmed from a pre-existing disease. Although the assault that took place unfortunately occurs all too often to corrections officers, it was nevertheless undesigned or unexpected for the purposes of this

inquiry, as <u>Richardson</u> and <u>Gable</u> illustrate.  The Board's attempt to distinguish the two cases on the basis of "the relative level of violence" is wholly unsupported by the caselaw.

The Board had accepted that Sharp met all the <u>Richardson</u> factors except for 2(b).  Because 2(b) is clearly applicable here, the Board's final agency decision is reversed, and the Board is directed to award accidental disability retirement benefits to Sharp.

Reversed and remanded for an award of accidental disability benefits.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

14